MARGARET CARPENTER, appellant,

v.

JOHN GRAY, executor, respondent.

It is no ground for removing an executor or requiring him to give security for assets in his hands, that he paid a premium in investing certain funds in government bonds, all the interest collected having

been paid over to the legatee; nor that he and his co-executor made an unjustifiable investment of other funds, such transaction not being alleged in the petition as a ground of complaint; nor that he, by advice of his co-executor and also of his counsel, did not bring suit against a former partner of testator to force a settlement of the firm's affairs, such failure to sue not being alleged in the petition; nor that a mortgage belonging to the estate had been assigned by him to a third person, in order to facilitate *its collection,* no bad faith appearing, and such assignment not being alleged in the petition; nor that he has sold his farm and the personal property thereon, there being no proof that the assets are insecure in his hands, or in any danger of being wasted.

On appeal from decree of Middlesex orphans court.

*Mr. G. O. Vanderbilt* and *Mr. A. V. Schenck,* for appellant.

*Mr. G. C. Ludlow,* for respondent.

THE ORDINARY.

The appellant, by her petition in the orphans court, sets forth that she is the daughter of Alexander Gray, deceased, and a legatee under his will; that John Gray and Alexander Gray, the executors, filed in the office of the surrogate of Middlesex, April 1st, 1874, a joint account of the estate of their testator, by which it appeared that they had received and set apart for her $3,000, which, according to the terms of the will, they were securely to invest, and to pay her annually the interest or income thereof during the life-time of her husband; that she does not know whether the $3,000 have been invested according to the requirements of the will, but has just reason to believe they have not been; that she has only received from the executors, since the joint account was filed, about $160 a year, while she is entitled, under the will, according to that account, to $210 a year; that she has been informed, and believes it to be true, that the $3,000 are in the hands of John Gray, one of the executors, and that he does not now own any real estate in this state, and she therefore prays that the executors may

be cited before the orphans court to render an account as to the investment of the $3,000, and the payment of the interest thereon, and that they may be required to give security as executors, and do and perform such other acts relative thereto as the court may deem proper.

John Gray, one of the executors, answers, that there has been no final settlement of the estate, and that, while on the partial accounting referred to in the petition there was a claim for allowance of $3,000 as having been set apart for the petitioner under the will, he does not, as yet, know with certainty, in consequence of there being several large claims against the estate whereon litigation is pending, whether the estate can pay the legacies given by the will or not, and he therefore does not admit the petitioner's right to claim that there has been or is in his hands, any fund in trust for her under the will; that when the executors filed the account, he believed that the estate was solvent, and therefore set off, temporarily, the $3,000; and still acting under the belief that the estate was solvent, but intending that the whole matter should abide the final settlement, he, on the 24th of August, 1874, invested $2,946.87 in the purchase of United States bonds, at the price of $117⅛ per $100, and intended them for the investment for the petitioner directed by the will, and that he paid her, January 15th, 1875, the half-year's interest on the bonds, which, at the value of gold, was $84; July 20th, 1875, a half-year's interest, at gold value, $87.50, and thereafter paid her the interest at gold value, as follows: January 16th, 1876, $84.38; July 8th, 1876, $84; January 8th, 1877, $80.06, and July 20th, 1877, $78.75, and holds her separate receipts for all these payments. He admits that he has no real estate in this state. He alleges that, until the litigation before referred to shall have been determined, it is not certain that there will be any money of the estate to be invested for the petitioner under the will; and he further alleges that he has never collected his legal charges for expenses or commissions on the money paid to the petitioner from time to time.

On the petition, application was made for an order requiring John Gray, as executor and trustee, to give security to the ordinary, by bond, with sureties, with condition for the faithful performance by him of his duty as trustee and executor under the will, on the suggestion that the property in his hands is unsafe, insecure and in danger of being wasted, and an order to show cause was made accordingly. Under it testimony was taken on both sides, and, after hearing, the application was, by order dated March 31st, 1879, denied, with costs.    From that order the petitioner appealed to this court.

The grounds on which the relief sought is claimed are, that the respondent, in making the investment for the petitioner, made it in government bonds, purchasing them at a premium (which, it is insisted, was waste), instead of investing, as the petitioner requested, on bond and mortgage; that he did not invest all the $3,000, but left part of it uninvested; that he invested $10,000 of the estate in bonds of the Northern Pacific Railroad Company, which have proved a total loss; that he refused, to the damage of the estate, to make a settlement, when he might have done so, of the business of the firm of Brown & Gray, bankers, of Wilkesbarre, of which the testator was a member; that he assigned to A. T. Meyrick a mortgage belonging to the estate, and that the respondent has become poor.

As regards the first and second grounds, it appears that the respondent has invested the $3,000 (except about $50) in government bonds, and he appears to have paid to the petitioner all the interest received on those bonds from the time of the investment until he was restrained by injunction from doing so.

The investment, by the executor, of $10,000 of the funds of the estate in Northern Pacific Railroad bonds was, so far as appears, an unjustifiable transaction.    But both executors participated in it; and, though it does not appear when it took place, it was, probably, before 1873.    No complaint of it is made in the petition.

The respondent's refusal to make a settlement of the business of the firm of Brown & Gray, appears to have been the exercise of his discretion.  He swears that the reason why he did not sue for a settlement was, that that course was not in accordance with the views of his co-executor, or the advice of his counsel, nor according to his own judgment.  The petition makes no complaint of this matter.

The respondent assigned the Hutchinson bond and mortgage (which was taken by the testator) to A. S. Meyrick, in trust for the estate, with a view to the advantage of the estate in bringing a suit upon it.  There is no evidence of bad faith or want of judgment in that transaction.  Nor is there any complaint in the petition in regard to it.

Finally, it appears that he has sold his farm and the personal property thereon, but it does not appear that the estate in his hands is insecure or in any danger of being wasted on that account, or at all.  Nor does the petition allege that it is so.

I do not find, in the testimony, any evidence of bad faith on the part of the respondent, or any just cause for removing him or requiring him to give security.  The petition asks only an account as to the investment of the $3,000, suggesting that it has not been invested at all, and complains that the amount of interest paid has not been sufficient, considering the amount of the fund; and it alleges that the respondent owns no real estate in this state.  The investment is shown to have been made, and it appears that all the interest received has been paid; and, though the respondent has no real estate in this state, it does not appear that the estate is insecure or in danger of being wasted in his hands.

The decree of the orphans court will be affirmed, with costs to be paid by the appellant.